IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| DAVID VAUGHN,<br>     PLAINTIFF,<br><br>v.<br><br>ALLIANT CAPITAL MANAGEMENT LLC,<br>HUNTINGTON DEBT HOLDING LLC,<br>PLATTE RIVER INSURANCE COMPANY, and<br>TRAVELERS CASUALTY AND SURETY COMPANY<br>OF AMERICA,<br>     DEFENDANTS. | CASE NO.:  2:18-cv-208 |

## COMPLAINT AND JURY DEMAND

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

2. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. This action arises out of violations of the Fair Debt Collection Practices Act and the Texas Finance Code by Alliant Capital Management LLC ("ACM"), Huntington Debt Holding LLC ("HDH").

4. Travelers Casualty & Surety Company of America ("Travelers") and Platte River Insurance Company ("Platte") are liable for the acts of ACM and HDH, respectively, by operation of statute.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

6. Plaintiff resides in this District.

## **PARTIES**

7. Plaintiff, David Vaughn ("Plaintiff"), is an adult individual residing in Upshur County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1).

8. ACM is a New York business entity operating from Amherst, New York.

9. ACM can be served via its registered agent in Texas, Corporation Service Company d/b/a/ CSC-Lawyers Incorporating Service Company, at 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

10. The principal purpose of ACM is the collection of debts using the mails and telephone and other means.

11. ACM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

12. ACM is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

13. HDH is a New York business entity.

14. HDH can be served via its registered agent in Texas, Corporation Service Company d/b/a/ CSC-Lawyers Incorporating Service Company, at 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

15. The principal purpose of HDH is the collection of debts using the mails and telephone and other means.

16. HDH regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

17. HDH is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7).

18. ACM and HDH are collectively referred to as "Defendants."

19. Travelers is a foreign entity that can be served in the state of Texas via its registered agent in Texas, Corporation Service Company d/b/a/ CSC-Lawyers Incorporating Service Company, at 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

20. Travelers is liable for acts committed by ACM pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto, bond number 7752241468TX, as well as any other applicable law.

21. Platte is a foreign entity that can be served in the state of Texas via its registered agent in Texas, Corporation Service Company d/b/a/ CSC-Lawyers Incorporating Service Company, at 211 East 7th Street, Suite 620, Austin, TX 78701-3218.

22. Platte is liable for acts committed by HDH pursuant to, and to the extent provided by, Chapter 392 of the Texas Finance Code and a bond secured pursuant thereto, bond number 41378732, as well as any other applicable law.

## FACTUAL ALLEGATIONS

23. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account (hereinafter the "Account"). Specifically, plaintiff believes the account was a payday loan obtained to pay for various personal effects, but was not used for any business or commercial purposes.

24. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

25. The Account allegedly went into default with the original creditor.

26. After the Account allegedly went into default, the Account was purchased by ACM for collection.

27. ACM placed the Account with or otherwise transferred to HDH to negotiate a settlement of the Account with Plaintiff on ACM's behalf.

28. ACM and HDH share common ownership or ownership by persons related to one another.

29. Plaintiff admits the existence of the Account, but disputes the amount Defendants attempted to collect from him.

30. Plaintiff requests that Defendants cease all further communications regarding the Account.

31. During the one year prior to the filing of this complaint, more specifically in approximately April 2018, HDH left approximately five voicemails on Plaintiff's phone in which the caller claimed to be from a process server from a company called "A1 Carrier." The messages indicated that the caller needed to deliver a "legal notice" at

Plaintiff's residence and that if he was not home, the caller threatened to come to his place of employment.  HDH informed Plaintiff that he needed to have a valid ID available and would need to sign for the "package."  Plaintiff was given claim number 277030.  If Plaintiff wanted to avoid this embarrassment, Plaintiff was told he could call 833-274-1755.

32. In addition to the five voicemails left on plaintiff's phone, HDH also left similar messages on Plaintiff's mother's phone, Plaintiff's wife's phone and Plaintiff's sister's phone.  These messages left for Plaintiff's relatives were substantially similar to the ones described above that were left for Plaintiff.

33. Plaintiff was completely embarrassed when his relatives called to let him know they had received these calls.

34. Plaintiff called back to the phone number left for him in these messages and was told that HDH was trying to deliver a "legal notice" from one of HDH's clients.  HDH described its office as a "pre-legal department."  HDH further told Plaintiff that the original creditor had filed a complaint for fraud against Plaintiff and that "fees and penalties" of more than $1,000 had been added to the balance of the Account.

35. Further, HDH told Plaintiff that Texas allows people to be arrested for failing to repay payday loans and implied that the Account was no longer in collections and that the caller was not a collector, but rather a mediator of a lawsuit that had been filed against Plaintiff.

36. HDH told Plaintiff that the creditor can freeze bank accounts, garnish you, suspend commercial licenses that you have.

37. HDH also told Plaintiff that "pick-up order" is an option where Plaintiff could be arrested for failure to repay a payday loan.

38. HDH told Plaintiff that he could call 888-326-1253 to discuss the ownership of the account.  That number belongs to HDH.

39. Additionally, HDH told Plaintiff that Plaintiff's conduct was like "criminal theft by deception" and that the original creditor would "probably will come after [him] for the bad check [he allegedly wrote]."  HDH asked Plaintiff if he wanted "to voluntarily repay this or do you want them to pursue this through the county court system?"

40. In another call to HDH, Plaintiff was told by a different collector a few days later that "this is litigation…We're not required to give you validation of debt."   Plaintiff was also told "this is a federally recorded line." When Plaintiff requested something in writing prior to paying any money, he was told that HDH is required by law to send a letter after the settlement arrangement was made.

41. After HDH refused to give Plaintiff anything in writing about the Account prior to Plaintiff making a payment, Plaintiff called the original creditor, Balance Credit, and was told that Balance Credit had sold the account to ACM in September 2017, for ACM to manage future collections on the Account.

42. By making all of the statements detailed above, HDH indirectly or directly told Plaintiff that a lawsuit had been filed or immanently would be filed against him.

43. The described above would cause the least sophisticated consumer to believe that a lawsuit had been filed or immanently would be filed against him.

44. As of the filing of this Complaint, no lawsuit has been filed against Plaintiff on the Account.

45. At the time HDH made the statements detailed above, neither HDH, nor the creditor on whose behalf HDH was collecting, had any intent to sue Plaintiff on the Account.

46. Further, there was no risk of Plaintiff being arrested as a result of a "pick-up order" nor had the original creditor filed any fraud complaints against Plaintiff.

47. The statements made by HDH were deceptive and misleading.

48. In every communication between with Plaintiff, HDH failed to inform Plaintiff that HDH was a debt collector, that HDH was attempting to collect a debt and/or that any information obtained would be used for the purpose of debt collection.

49. HDH's collection practices caused Plaintiff to suffer fear, anxiety, stress, sleeplessness, mental anguish mild depression and/or distraction from normal life.

50. HDH's sole purpose for making the statements was to intimidate Plaintiff into making a payment on the Account.

51. HDH's purpose for calling Plaintiff was to attempt to collect the Account.

52. The telephone calls described above each constituted a "communication" as defined by FDCPA § 1692a(2).

53. ACM directly or indirectly, exerted influence over HDH and caused HDH to act in the manner that it did with respect to Plaintiff.

54. ACM knew that HDH repeatedly or continuously engaged in collection practices as described above.

55. ACM directly or indirectly, exerted influence over HDH and caused HDH to act in the manner that it did with respect to Plaintiff.

56. ACM knew that HDH repeatedly or continuously engaged in collection practices as described above.

57. During all times pertinent hereto, ACM (a) created the collection policies and procedures used by HDH and its employees and agents, in connection with their common efforts to

collect consumer debts, (b) managed or otherwise controlled the daily collection operations of HDH, (c) oversaw the application of the collection policies and procedures used by HDH and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by HDH and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by HDH and its employees and agents in connection with its common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by HDH and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

58. The only reason that HDH and/or its representative(s), employee(s) and/or agent(s) made telephone call(s) to Plaintiff was to attempt to collect the Account.

59. The only reason that HDH and/or its representative(s), employee(s) and/or agent(s) had telephone conversation(s) with Plaintiff was to attempt to collect the Account.

60. The statements and actions of Defendants and their representative(s), employee(s) and/or agent(s) constitute illegal communications in connection with debt collection and violate 15 U.S.C. §1692d generally and §1692d(2) specifically and §1692e generally and §1692e(2)&(3)&(4)&(5)&(10)&(11)&(13) specifically and §1692g(a) and Tex. Fin. Code §392.101 and §392.302(1) and § 392.304(a)(4)&(5)&(8)&(14)&(17)&(19).

61. All of the conduct by Defendants and/or their employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

62. ACM had actual knowledge that ACM repeatedly or continuously engaged in acts or practices prohibited by Chapter 392 of the Texas Finance Code.

63. ACM had actual knowledge that HDH repeatedly or continuously engaged in acts or practices prohibited by Chapter 392 of the Texas Finance Code.

64. As a consequence of Defendants' collection activities and communication(s), Plaintiff seeks damages and attorneys fees and costs pursuant to 15 U.S.C. § 1692k and damages, an injunction, attorneys fees and costs pursuant to Tex. Fin. Code § 392.403.

## **RESPONDEAT SUPERIOR**

65. The representative(s) and/or collector(s) at HDH were employee(s) and/or agents of HDH at all times mentioned herein.

66. The representative(s) and/or collector(s) at HDH were acting within the course of their employment at all times mentioned herein.

67. The representative(s) and/or collector(s) at HDH were under the direct supervision and control of HDH at all times mentioned herein.

68. The actions of the representative(s) and/or collector(s) at HDH are imputed to their employer, HDH.

69. ACM was aware of the collection methods and practices used by HDH's employees.

70. HDH acted at all times as an agent of ACM.

71. The actions of HDH are imputed to ACM.

### COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. §1692, et seq. BY HUNTINGTON DEBT HOLDING LLC

72. The previous paragraphs are incorporated into this Count as if set forth in full.

73. The act(s) and omission(s) of HDH and its representative(s), employee(s) and/or agent(s) violated 15 U.S.C. §1692d generally and §1692d(2) specifically and §1692e generally and specifically §1692e(2)& (3)&(4)&(5)&(10)&(11)&(13) and §1692g(a).

74. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from HDH.

### COUNT II:  VIOLATIONS OF THE TEXAS FINANCE CODE BY HUNTINGTON DEBT HOLDING LLC

75. The previous paragraphs are incorporated into this Count as if set forth in full.

76. The act(s) and omission(s) of HDH and its representative(s), employee(s) and/or agent(s) violated Tex. Fin. Code §392.101 and §392.302(1) and §392.304(a)(4)&(5)&(8)&(14)&(17)&(19).

77. Pursuant to Tex. Fin. Code §392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from HDH.

78. Pursuant to Tex. Fin. Code §392.403, Plaintiff seeks an injunction against HDH enjoining it from future violations of the Texas Finance Code as described herein.

### COUNT III:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY HUNTINGTON DEBT HOLDING LLC

79. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, HDH is liable to Plaintiff for invading Plaintiff's privacy (intrusion on

seclusion).  HDH intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

80. Plaintiff suffered actual damages from HDH as a result of the intrusion on Plaintiff's privacy.

### COUNT IV:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq. BY ALLIANT CAPITAL MANAGEMENT LLC

81. The previous paragraphs are incorporated into this Count as if set forth in full.

82. By influencing and/or controlling the conduct of HDH, ACM is liable for the act(s) and omission(s) of HDH and its representative(s), employee(s) and/or agent(s) for violations of 15 U.S.C. §1692d generally and §1692d(2) specifically and §1692e generally and specifically §1692e(2)& (3)&(4)&(5)&(10)&(11)&(13) and §1692g(a).

83. Pursuant to 15 U.S.C. §1692k Plaintiff seeks damages, reasonable attorney's fees and costs from ACM.

### COUNT V:  VIOLATIONS OF THE TEXAS FINANCE CODE BY ALLIANT CAPITAL MANAGEMENT LLC

84. The previous paragraphs are incorporated into this Count as if set forth in full.

85. By influencing and/or controlling the conduct of HDH, ACM is liable for the act(s) and omission(s) of HDH and its representative(s), employee(s) and/or agent(s) for violations of Tex. Fin. Code §392.101 and §392.302(1) and §392.304(a)(4)&(5)&(8)&(14)&(17)& (19) and §392.306.

86. By using HDH and having actual knowledge that HDH repeatedly or continuously engages in acts described above, ACM violated Tex. Fin. Code §392.306.

87. Pursuant to Tex. Fin. Code §392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from HDH.

88. Pursuant to Tex. Fin. Code §392.403, Plaintiff seeks an injunction against ACM enjoining it from future violations of the Texas Finance Code as described herein.

### COUNT VI:  INVASION OF PRIVACY (INTRUSION ON SECLUSION) BY ALLIANT CAPITAL MANAGEMENT

89. In the alternative, without waiving any of the other causes of action herein, without waiving any procedural, contractual, statutory, or common-law right, and incorporating all other allegations herein to the extent they are not inconsistent with the cause of action pled here, ACM is liable to Plaintiff for colluding with HDH to invade Plaintiff's privacy (intrusion on seclusion).  ACM intentionally caused the intrusion upon Plaintiff's solitude, seclusion, or private affairs, and such intrusion would be highly offensive to a reasonable person.

90. Plaintiff suffered actual damages from ACM as a result of the intrusion on Plaintiff's privacy.

### COUNT VII:  IMPUTED LIABILITY OF TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA FOR LIABILITY OF ALLIANT CAPITAL MANAGEMENT LLC

91. The previous paragraphs are incorporated into this Count as if set forth in full.

92. The act(s) and omission(s) of ACM and its representative(s), employee(s) and/or agent(s) in violation of Tex. Fin. Code §392.101 and §392.302(1) and § 392.304(a)(4)&(5)&(8)&(14)&(17)&(19) and §392.306 are imputed to Travelers pursuant to Tex. Fin. Code §392.102.

93. Pursuant to Tex. Fin. Code §392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Travelers.

## COUNT VIII:  IMPUTED LIABILITY OF
## PLATTE RIVER INSURANCE COMPANY
## FOR LIABILITY OF HUNTINGTON DEBT HOLDING LLC

94. The previous paragraphs are incorporated into this Count as if set forth in full.

95. The act(s) and omission(s) of HDH and its representative(s), employee(s) and/or agent(s) in violation of Tex. Fin. Code §392.101 and §392.302(1) and §392.304(a)(4)&(5)&(8)&(14)&(17)&(19) are imputed to Platte pursuant to Tex. Fin. Code §392.102.

96. Pursuant to Tex. Fin. Code §392.403, Plaintiff seeks damages, reasonable attorney's fees and costs from Platte.

## EXEMPLARY DAMAGES

97. Exemplary damages should be awarded against HDH and ACM because the harm with respect to which Plaintiff seeks recovery of exemplary damages resulted from malice (which means that there was a specific intent by HDH to cause substantial injury or harm to Plaintiff) and/or gross negligence (which means that HDH's actions and/or omissions (i) when viewed objectively from HDH's standpoint at the time of the acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others and (ii) were such that HDH had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of  others).

## JURY TRIAL DEMAND

98. Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

99. Judgment in favor of Plaintiff and against Huntington Debt Holding LLC as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d. An injunction permanently enjoining HDH following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

    e. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    f. Such other and further relief as the Court deems just and proper.

100. Judgment in favor of Plaintiff and against Huntington Debt Holding LLC and Platte River Insurance Company, jointly and severally, as follows:

    a. Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

    b. Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

    c. Such other and further relief as the Court deems just and proper.

101. Judgment in favor of Plaintiff and against Alliant Capital Management LLC as follows:

    a. Actual damages pursuant to 15 U.S.C. §1692k(a)(1);

    b. Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2);

    c. Reasonable attorneys fees and costs pursuant to 15 U.S.C. §1692k(a)(3);

    d. An injunction permanently enjoining ACM following trial of this cause from committing acts in violation of the Texas Finance Code as cited herein pursuant to Tex. Fin. Code §392.403(a)(1);

    e. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    f. Such other and further relief as the Court deems just and proper.

102. Judgment in favor of Plaintiff and against Alliant Capital Management LLC and Travelers Casualty & Surety Company of America, jointly and severally, as follows:

    a. Actual damages pursuant to Tex. Fin. Code §392.403(a)(2);

    b. Reasonable attorneys fees and costs pursuant to Tex. Fin. Code §392.403(b); and

    c. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE WOOD FIRM, PLLC

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
11610 Pleasant Ridge Rd.
Suite 103 – PMB 208
Little Rock, AR  72223
TEL:  682-651-7599
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff